## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KYSHUN WEBSTER, SR.**                                        **CIVIL ACTION**

**VERSUS**                                                            **No. 23-6607**

**ED MICHELE**                                                    **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] to dismiss plaintiff Kyshun Webster, Sr.'s ("Webster") *pro se* complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). The motion was filed by defendant Ed Michel ("Michel"),[2] Inspector General, Office of the Inspector General (the "OIG") of the City of New Orleans. Webster has not filed any opposition to the motion, and the deadline for doing so has passed.[3] For the reasons that follow, the Court grants Michel's motion to dismiss.

### I.     FACTUAL BACKGROUND

This case stems from a report allegedly published by the OIG detailing the investigation of Webster in his capacity as the Executive Director of the City of New

---

[1] R. Doc. No. 6.

[2] The Court notes that Michel's last name is incorrectly spelled "Michele" on Webster's complaint and, consequently, on the case caption.

[3] The motion was originally set for submission on February 21, 2024. R. Doc. No. 6-7 (notice of submission). On February 20, 2024, Webster filed a motion to continue. R. Doc. No. 8. The Court granted Webster's motion to continue in part and re-set the submission date of Michel's motion to March 13, 2024. R. Doc. No. 9, at 1. In its order resetting the submission date, the Court cautioned Webster that, pursuant to Local Rule 7.5, Webster's response would be due eight days before the noticed submission date, on March 5, 2024. R. Doc. No. 9, at 1, n.5.

Orleans's Juvenile Justice Intervention Center (the "JJIC").[4] Webster alleges that, before accepting his appointment as the JJIC's Executive Director, he submitted a letter conditioning his acceptance on "a flexible work schedule" and he "completed all required disclosures regarding pre-existing business interests and other sources of income received as required by city and state law."[5]

Webster asserts that, around 2021, he "was notified of an investigative inquiry by the . . . OIG . . . regarding [his] attendance."[6] According to Webster, despite the City Attorney advising OIG that data regarding employees' electronic door swipes to enter the building were inadequate to investigate attendance, the OIG used electronic door swipe data "as its primary basis of evidence."[7] Webster allegedly cooperated with the investigation by answering interrogatories without ever being notified of the specific accusations against him.[8] Additionally, Webster's counsel requested a copy of any report from the OIG prior to its release.[9]

The complaint states that, around November 1, 2022, the OIG published a "scathing report" about Webster and "widely disseminated it to the media[.]"[10] This report allegedly "contains major inaccuracies and misrepresentations of [ ] Webster's employment terms that were misleading to the public and damaging to [ ] Webster's

---

[4] *See generally* R. Doc. No. 1.
[5] *Id.* at 2, ¶¶ 2–3.
[6] *Id.* ¶ 6.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 9.
[10] *Id.* ¶ 10.

2

reputation[.]"[11] Webster's complaint takes issue with the report for various reasons, including its alleged bias in choosing investigative techniques, its alleged overreliance on door swipes, and its alleged lack of regard for conflicting testimony from employees.[12] Specifically, Webster asserts that the report ignores the City's policy regarding employee timekeeping, "does not comply with accepted best practices for objectivity, fairness, and quality assurance as published by the Association of Offices of Inspector Generals[,]" inaccurately analyzes Webster's attendance, uses incendiary language, and fails to fully represent the context of COVID-19, during which the City limited the number of personnel required to report to work in person.[13] By singling out Webster despite the City's COVID-19 policy, the OIG allegedly "discriminately and unduly targeted and publicly persecuted [Webster] for making [his] best attempts to comply with this policy while also keeping youth safe from COVID-19."[14]

According to the complaint, the report also erroneously stated that there was no documentation for two of Webster's longer absences—seventeen days and eight days, respectively—when these absences are supported by medical documentation possibly not released by the City to protect Webster's "medical privacy" pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").[15] Likewise, the report allegedly fails to acknowledge that, during Hurricane Ida, Webster slept at the

---

[11] *Id.* ¶ 11.
[12] *Id.* ¶ 12.
[13] *Id.* ¶¶ 14–22.
[14] *Id.* ¶ 23.
[15] *Id.* ¶ 24.

JJIC building for twelve days and cooked for youth and staff without ever using his swipe card due to power outages.[16] The complaint further alleges that Michel "colluded with [a] television journalist, even leaking information to media sources prematurely and launched his own politicized campaign to publicly malign [Webster] based on rumors, hearsay, and sensationalized sources and techniques used by television journalist[s], which are incompatible with the high bar of evidentiary standards for fairness and objectivity set by the National Association of Inspector Generals."[17] Moreover, the complaint alleges that the OIG "wrongfully condemned" and attempted to criminalize Webster's legitimate donation of a dog to the JJIC by referring it to the Louisiana Board of Ethics for investigation.[18] Finally, the complaint asserts that the OIG report "made false claims that [Webster] misspent finances."[19]

Based on these allegations, Webster's complaint asserts violations of substantive due process pursuant to the Fourteenth Amendment to the U.S. Constitution.[20] Webster's complaint also suggests he may be asserting violations of his procedural due process rights pursuant to the Fourteenth Amendment.[21] The complaint further asserts a discrimination claim based on disparate treatment because Michel "colluded with [ ] influential Caucasian actors and influencers . . . to publicly defame and falsely accuse Webster based on unsubstantiated rumors and

---

[16] *Id.* ¶ 25.

[17] *Id.* ¶ 27.

[18] *Id.* ¶¶ 28–31.

[19] *Id.* at 9.

[20] *Id.* ¶¶ 32–39.

[21] *See id.*

mere opinion of the OIG."[22] Additionally, the complaint alleges that Michel was "negligent in the conduct of his duty to insure fairness, objectivity, and quality control of the accuracy and preponderance of the evidence when bringing public allegations against [Webster]."[23] The complaint also alleges that production of the report constituted the crime of injury of public records pursuant to Louisiana Revised Statute § 14:132 and that Michel and/or OIG are liable for the state-law torts of "[d]efamation" and "[p]ublic slander and libel."[24] Finally, the complaint asserts a claim against the OIG for violating HIPAA's privacy rule and the City's policy memorandum regarding HIPAA by disclosing Webster's personal health information to media sources and other personnel involved in the publication of the report.[25] Webster seeks a declaratory judgment that "the defendant's actions violated [his] rights under the 14th and 15th Amendments[,]" an injunction "prohibiting the defendant from further violations of [his] constitutional rights[,]" compensatory and punitive damages, and attorneys' fees and costs.[26]

In response, Michel argues that Webster's complaint should be dismissed pursuant to Rules 12(b)(6), 12(b)(1), and 12(c).[27]

---

[22] *Id.* ¶¶ 43–44.

[23] *Id.* ¶ 40.

[24] *Id.* ¶¶ 41–42, 45.

[25] *Id.* ¶ 46.

[26] *Id.* ¶ 47.

[27] R. Doc. No. 6. Although Michel's memorandum in support of his motion suggests that the motion is also brought pursuant to Rule 12(c), Michel makes no arguments specific to Rule 12(c), and such claim is therefore deemed waived.

## II.   LEGAL STANDARDS

### a. Rule 12(b)(6)

Rule 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).[28]

### b. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to Rule 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

---

[28] Because the Court resolves Michel's motion pursuant to Rule 12(b)(6), it need not set forth the Rule 12(c) standard of law.

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. If a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g.*, *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III.   ANALYSIS

As noted, Michel argues that Webster's complaint should be dismissed. Specifically, Michel contends that, to the extent Webster asserts any claims against the OIG, those claims should be dismissed because the OIG lacks the procedural capacity to be sued.[29] Michel also argues that the complaint fails to state a plausible claim pursuant to 42 U.S.C. § 1983 because Webster has not identified any constitutional violation.[30] Even if Webster's complaint did state a claim for procedural or substantive due process violations, Michel asserts that the complaint should be dismissed because he is entitled to qualified immunity.[31]

Michel also argues that the complaint fails to state a claim for discrimination and fails to state a claim for a HIPAA violation since the report does not contain any confidential medical information and there is no personal right of action arising from

---

[29] R. Doc. No. 6-1, at 7–8.
[30] *Id.* at 8–13.
[31] *Id.* at 13–15.

a HIPAA violation.[32] Michel further asserts that, if Webster's federal claims are dismissed, the Court should dismiss any pendent state-law claims.[33] Finally, Michel argues that the Court lacks jurisdiction over Webster's claim for declaratory relief since Webster has not stated a federal claim or other basis for federal jurisdiction.[34] As noted, Webster did not file any opposition to Michel's motion to dismiss. The Court considers each argument in turn.

### a.   The OIG's Procedural Capacity

Michel first asserts that, to the extent Webster's complaint asserts claims against the OIG, those claims should be dismissed because the OIG lacks the procedural capacity to be sued.[35] Pursuant to Federal Rule of Civil Procedure 17(b), "capacity to sue or be sued shall be determined . . . by the law of the state where the court is located." Accordingly, Louisiana law governs the OIG's capacity to be sued.

"[T]o possess juridical capacity under Louisiana law, an entity must qualify as a 'juridical person.'" *Winn v. New Orleans City*, 919 F. Supp. 2d 743, 750 (E.D. La. 2013) (Milazzo, J.) (quoting *Dugas v. City of Breaux Bridge Police Dep't*, 757 So. 2d

---

[32] *Id.* at 15–17.

[33] *Id.* at 17–18.

[34] *Id.* at 18. To be clear, Michel does not argue that the Court lacks subject matter jurisdiction over Webster's federal or state-law claims against him. Michel's jurisdictional argument is only asserted in support of his contention that, if the Court finds that Webster's complaint fails to state any federal claim, the Court would lack subject matter jurisdiction to issue a declaratory judgment. *See id.* Accordingly, the Court need not consider Michel's Rule 12(b)(1) argument before considering his Rule 12(b)(6) argument. *Cf. In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d at 286 (citation omitted).

[35] R. Doc. No. 6-1, at 7–8. The complaint names "City of New Orleans Office of OIG Through Ed Michele, Inspector General" and appears to assert certain allegations and claims against the OIG directly. *See generally* R. Doc. No. 1.

741, 743 (La. Ct. App. 2000)). Article 24 of the Louisiana Civil Code provides that "[a] juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." "The Louisiana Supreme Court has held that juridical status or legal capacity depends on whether 'the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.'" *Dantzler v. Pope*, No. 08-3777, 2009 WL 959508, at *1 (E.D. La. Apr. 3, 2009) (Africk, J.) (quoting *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 346–47 (La. 1994)). "Therefore, in the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Id.* (citing *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 615 (La. App. 3d Cir. 1994)). When a party lacks juridical capacity to be sued, the claims asserted against that party are dismissed pursuant to Rule 12(b)(6). *See, e.g.*, *Dantzler*, 2009 WL 959508, at *1–2.

Neither party has cited any law conferring upon the OIG the authority to sue or be sued. *See Winn*, 919 F. Supp. 2d at 750. Having identified no legal authority to support an argument that the OIG is a juridical entity, the Court finds that the OIG lacks the capacity to be sued.[36] To the extent Webster's complaint asserts any claims against the OIG, the Court will dismiss those claims pursuant to Rule 12(b)(6). *See, e.g.*, *Dantzler*, 2009 WL 959508, at *1–2.

---

[36] Several courts in this district have found that the New Orleans Police Department is not amenable to suit because it is "simply a department of the City government." *See, e.g.*, *Manley v. Louisiana*, No. 00-1939, 2001 WL 506175, at *2 (E.D. La. May 11, 2001) (Vance, J.); *see also Winn*, 919 F. Supp. 2d at 750 (collecting cases). The same is true of the OIG.

### b.  Due Process Claim

Michel next argues that Webster's complaint fails to state a due process claim pursuant to 42 U.S.C. § 1983.[37] The Court notes that Webster's complaint does not cite § 1983 and purports to assert claims for violations of the Fourteenth Amendment directly under the Constitution.[38] However, Webster has no cause of action directly under the Constitution since § 1983 provides the exclusive remedy for bringing his constitutional claims. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the U.S. Constitution but must utilize 42 U.S.C. § 1983.") (citing *Azul-Pacifico Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)); *Encalade v. Biggs*, No. 23-3283, 2023 WL 7180646, at *7 (E.D. La. Oct. 13, 2023) (Currault, M.J.) (explaining that "[t]here is no cause of action directly under the Constitution" and "a plaintiff seeking relief in federal court on constitutional grounds must do so pursuant to a federal civil rights statute, such as § 1983"). Accordingly, reading Webster's complaint liberally,[39] the Court construes it as invoking the Court's federal question jurisdiction pursuant to § 1983. *See, e.g.*, *Encalade*, 2023 WL 7180646, at *7; *Johnson v. City of Shelby, Miss*, 574 U.S. 10, 11 (2014) ("[N]o heightened pleading rule requires plaintiffs seeking damages for

---

[37] R. Doc. No. 6-1, at 8–15.

[38] R. Doc. No. 1, ¶¶ 32–42.

[39] *See Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) ("If a complaint is written *pro se*, [courts] are to give it a liberal construction.").

violations of constitutional rights to invoke § 1983 expressly in order to state a claim.").

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting § 1983). To state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Id.* (cleaned up). A plaintiff must allege a violation of a *specific* constitutional or statutory federal right to be entitled to relief pursuant to § 1983. *Howard v. Ferrand*, No. 22-701, 2023 WL 346082, at *3 (E.D. La. Jan. 20, 2023) (Vance, J.).

As noted, Webster's complaint explicitly asserts violations of substantive due process pursuant to the Fourteenth Amendment to the U.S. Constitution.[40] Construed liberally, the complaint also appears to assert violations of procedural due process.[41] "The Due Process Clause of the Fourteenth Amendment declares that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Duhon v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 20-2022, 2021 WL 3711366, at *3 (E.D. La. Aug. 20, 2021) (Milazzo, J.) (quoting U.S. Const. amend. XIV). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in

---

[40] R. Doc. No. 1, ¶¶ 32–39.
[41] *See id.*

itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (quoting *Zinerman v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original)). "To prevail on a [procedural] due process claim, plaintiffs must [therefore] show that: (1) they possess a [life, liberty, or] property interest that is protected by the due process clause, and (2) [the defendant's] procedures are constitutionally inadequate." *Id.* (quoting *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008)).

"Substantive due process, on the other hand, 'ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes.'" *Id.* at \*4 (quoting *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637 646 (W.D. Tex. 2018)). "Thus, 'substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest.'" *Id.* (quoting *Lewis v. Univ of Tex. Med. Branch at Galveston*, 65 F.3d 625, 631 (5th Cir. 2011)).

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017)). "Moreover, [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . [He] must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

As Michel points out, Webster has not sufficiently alleged a property interest in his job as Executive Director of the JJIC. "Under Louisiana law, a public employee can have a property interest in their job if: (1) the employer contracted with the employer to fire him only for cause, or (2) the employee is a permanent classified employee under the Louisiana Civil Service System." *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 941 (E.D. La. 2011) (Berrigan, J.) (citing *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996)). The complaint does not allege that Webster contracted with his employer to fire him only for cause. Likewise, it does not allege that Webster was a permanent classified employee. In fact, the complaint does not even allege that Webster was deprived of a property interest; it states only that he was deprived of "life and liberty."[42] Accordingly, Webster has not adequately alleged a property interest in his job sufficient to support a due process claim pursuant to § 1983.

Michel also contends that Webster "had no liberty interest at stake because this was not a criminal investigation and [Michel] made no referral to a prosecutive authority."[43] However, a liberty interest may be implicated even where there is no criminal investigation. *See, e.g.*, *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (explaining that a plaintiff can plausibly allege that defamatory statements of a government official deprived him of a protected liberty interest if certain conditions are satisfied).

---

[42] R. Doc. No. 1, ¶ 39.
[43] R. Doc. No. 6-1, at 12.

The U.S. Supreme Court has explained that reputation alone is neither "liberty" nor "property" "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976). There is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702.

The U.S. Court of Appeals for the Fifth Circuit has applied this Supreme Court precedent "by requiring a section 1983 plaintiff to show stigma plus an infringement of some other interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935–36 (5th Cir. 1996) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991)). "[F]or a statement to be sufficiently stigmatizing to satisfy the first prong of the test, the statement must be both false and assert some serious wrongdoing on the part of the plaintiff." *Taylor v. LeBlanc*, No. 20-3180, 2021 WL 3675022, at *7 (E.D. La. Aug. 19, 2021) (Africk, J.) (quoting *Vander Zee*, 73 F.3d at 1369). "In order to satisfy the second prong, a plaintiff must 'allege the deprivation of a protected interest.'" *Id.* (quoting *Vander Zee*, 73 F.3d at 1369). "And '[n]either harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries.'" *Id.* (quoting *Vander Zee*, 73 F.3d at 1369).

Even assuming Webster's complaint could satisfy the first prong of the stigma-plus-infringement standard, it does not satisfy the second prong. Webster's complaint alleges that the OIG's investigation and report "denied him of future work opportunities[ ] and destroyed his private business endeavors[,] [t]hus depriving

[Webster] of life and liberty."[44] As explained, neither harm to Webster's reputation nor the consequent impairment of future business or employment opportunities qualifies as a constitutionally cognizable injury. *See Taylor*, 2021 WL 3675022, at *7. Accordingly, the Court must dismiss Webster's due process claims pursuant to Rule 12(b)(6).[45]

### c.   Discrimination Claim

Michel also argues that Webster's discrimination claim should be dismissed for failure to state a claim.[46] Webster alleges that Michel's investigation singled him out and subjected him to disparate treatment by wrongly applying a standard of "on-site" attendance which was "not evenly applied" and which "counter[ed] the [City of New Orleans's Chief Administrative Office's] policy mandate."[47] The complaint further alleges that Michel "colluded with other Caucasian actors and influencers" by "leak[ing] premature information regarding [the] investigation" before Webster had the opportunity to rebut the alleged misinformation in the OIG report.[48] Specifically, these individuals conspired with Michel to "publicly defame and falsely accuse [Webster] based on unsubstantiated rumors and mere opinion of the OIG[,]" resulting in Webster's "unequal treatment" and suffering of "adverse actions."[49]

---

[44] R. Doc. No. 1, ¶ 39.

[45] The Court notes that, aside from Webster's conclusory assertion regarding his "*life* and liberty," *see* R. Doc. No. 1, ¶ 39 (emphasis added), nothing in the complaint suggests Webster was deprived of a constitutionally protected "life" interest without due process.

[46] R. Doc. No. 6-1, at 15–17.

[47] R. Doc. No. 1, ¶ 43.

[48] *Id.* ¶ 44.

[49] *Id.*

It is not clear whether Webster's discrimination claim is asserted pursuant to Title VII of the Civil Rights Act of 1964 or pursuant to § 1983. To the extent Webster asserts an employment discrimination claim pursuant to Title VII, he must allege the existence of an employer-employee relationship. *See Garman v. Helix Energy Sols. Grp.*, No. 11-2341, 2012 WL 458822, at * 2 (E.D. La. Feb. 13, 2012) (Vance, J.). Since Webster does not allege that Michel was his employer, he cannot state a claim against Michel pursuant to Title VII. *See id.*

To the extent Webster's discrimination claim asserts a violation of the Equal Protection Clause of the Fourteenth Amendment, such a claim must be brought pursuant to § 1983. *See Arpin*, 261 F.3d at 925; *Encalade*, 2023 WL 7180646, at *7. The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting U.S. Const. amend. XIV § 1). "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). "An equal protection claim depends on either identifying a class or showing that the aggrieved party is a 'class of one.'" *Monumental Task Comm., Inc. v. Foxx*, No. 15-6905 c/w 16-12495, 2016 WL 5780194, at *3 (E.D. La. Oct. 4, 2016) (Barbier, J.) (citing *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015)).

Although Webster's complaint sounds in racial discrimination, Webster has not specifically identified a class subjected to disparate treatment. Rather, he alleges that he alone was "singled-out" and that the alleged false accusations contained in the OIG report and in media broadcasts were directed only at him.[50] Accordingly, the Court will liberally construe Webster's equal protection claim as a "class of one" claim. *See Foxx*, 2016 WL 5780194, at *5.

To survive the instant motion to dismiss based on this "class of one" claim, Webster "must have alleged facts which plausibly state that (1) he was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id.* Michel's motion to dismiss does not directly address Webster's "discrimination" claim as a potential equal protection claim. Michel argues only that the OIG report was not "leaked" because it became a public record upon completion of the investigation and that Webster "did not have any right to an advance review and rebuttal of the [r]eport."[51] Michel also "denies that a standard of 'on-site' attendance was improperly considered in the OIG's investigation[.]"[52] However, to accept the allegations in Webster's complaint as true, the Court must accept that the OIG report was inaccurate, that it wrongly relied on door-swipe data, and that it was "based on unsubstantiated rumors and mere opinion of the OIG."[53]

---

[50] R. Doc. No. 1, ¶¶ 43–44.
[51] R. Doc. No. 6-1, at 15–16.
[52] *Id.* at 16.
[53] R. Doc. No. 1, ¶¶ 43–44.

The Court must also accept that this report was shared with the media before Webster was given the chance to "rebut and defend the misinformation."[54]

Accepting these allegations as true, the Court notes that, while Webster alleges that he was singled out, he does not specifically reference any similarly situated individuals. Likewise, Webster does not allege any facts indicating that similarly situated persons were treated differently. Accordingly, Webster's complaint fails to state a "class of one" equal protection claim. *See Holden v. Perkins*, 398 F. Supp. 3d 16, 25–26 (E.D. La. 2019) (Barbier, J.) (holding that a plaintiff, a student-athlete, had failed to plausibly state that she was treated differently from others similarly situated where the plaintiff's petition did not reference similarly situated persons and plaintiff provided no facts supporting her conclusion that "all other student athletes received notice and a hearing").[55]

---

[54] *Id.* ¶ 44.

[55] Webster's complaint quotes Section 2-1120(8) of the New Orleans Code of Ordinances to support his claim that he was entitled to "30 days from the transmittal date of the report to submit a written explanation or rebuttal of the findings before the report is finalized[.]" *Id.* ¶ 34. However, as Michel observes, this provision applies only to "an audit or evaluation report," not to an investigation report. *Compare* New Orleans Code of Ordinances § 2-1120(8)(a) ("Upon completion of any audit, evaluation *or investigation*, the office of inspector general shall report the results of its findings and any recommendations to the ethics review board." (emphasis added)) *with id.* § 2-1120(8)(b) ("Prior to concluding *an audit or evaluation report*, which contains findings as to the person or entity which is the subject of the audit or evaluation, the office of inspector general shall provide the affected person or entity with an internal review copy of the report. Such person or entity shall have 30 days from the transmittal date of the report to submit a written explanation or rebuttal of the findings before the report is finalized . . ." (emphasis added)).

### d.    HIPAA Claim

Michel next argues that Webster's claim for a HIPAA violation should be dismissed.[56] HIPAA protects the confidentiality of a patient's medical records. 42 U.S.C. §§ 1320d-1–d-7. However, the Fifth Circuit has held that "there is no private cause of action under HIPAA[.]" *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006). Accordingly, Webster's HIPAA claim must be dismissed pursuant to Rule 12(b)(6).

### e.    State-Law Claims

Michel also asserts that the Court should decline to exercise supplemental jurisdiction over Webster's state-law claims if it dismisses Webster's federal claims.[57] A district court may decline to exercise supplemental jurisdiction over a state-law claim if "the district court has dismissed all other claims over which the district court has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). A district court has "wide discretion" when deciding whether it should retain jurisdiction over state-law claims once all federal claims have been dismissed. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999).

However, the general rule in the Fifth Circuit is "to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). In addition, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d

---

[56] R. Doc. No. 6-1, at 17.
[57] R. Doc. No. 6-1, at 17–18.

342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

Upon review, the Court concludes that it will decline to exercise supplemental jurisdiction over Webster's state-law claims. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, allowing Louisiana courts to rule on Louisiana law "encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Bitte v. EMC Mortgage Corp.*, No. 07-9273, 2009 WL 1950911, at *2 (E.D. La. July 1, 2009) (Africk, J.) (citations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.* The Court therefore declines to exercise supplemental jurisdiction over the remaining state-law claims. Those claims will be dismissed without prejudice. *See id.* (dismissing state-law counterclaim without prejudice once no federal issues remained).

### f.    Declaratory Judgment Claims

Finally, Michel argues that the Court lacks subject matter jurisdiction over Webster's request for a declaratory judgment.[58] As the Fifth Circuit has explained, "[w]hen the other claims have been dismissed, it is also appropriate to dismiss any declaratory-judgment request." *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015) (citing *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014)). Accordingly, the Court will deny Webster's request for a declaratory

---

[58] R. Doc. No. 6-1, at 18.

judgment that Michel's actions violated Webster's Fourteenth and Fifteenth Amendment rights.[59]

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Michel's motion to dismiss is **GRANTED**. Webster's federal claims against Michel are **DISMISSED WITH PREJUDICE**. Webster's state-law claims against Michel are **DISMISSED WITHOUT PREJUDICE**. Webster's request for a declaratory judgment that Michel violated his federal constitutional rights is **DENIED**.

New Orleans, Louisiana, March 27, 2024.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[59] The Court notes that Webster's complaint makes no allegations that his voting rights under the Fifteenth Amendment were violated.